Lawrence Leroy **FARROW**,
Plaintiff-Appellant,

v.

**UNITED STATES of America**,
Defendant-Appellee.

No. 74–2429.

United States Court of Appeals,
Ninth Circuit.

Aug. 31, 1978.

Lawrence Leroy Farrow, in pro per.

Stephen V. Petrix, Asst. U. S. Atty., (on the brief), Terry J. Knoepp, U. S. Atty., San Diego, Cal., for defendant-appellee.

Before BROWNING, ELY, HUFSTED-LER, WRIGHT, TRASK, CHOY, GOOD-

WIN, WALLACE, SNEED, KENNEDY and ANDERSON, Circuit Judges.

CHOY, Circuit Judge:

Farrow appeals from the district court's determination upholding his sentence for jumping bail and failing to pay the special tax on 119 pounds of marijuana in violation of 18 U.S.C. § 3150 and 26 U.S.C. §§ 4755(a)(1), 7202. We affirm.

On January 24, 1972, appellant was sentenced to three years on the bail jump count and to five years on the tax count, subject to the early parole provisions of 18 U.S.C. § 4208(a)(2) (now 18 U.S.C. § 4201 et seq.). He subsequently filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255 principally alleging that in passing sentence, the trial court considered four prior convictions rendered invalid by *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *Gideon* was made fully retroactive in *Pickelsimer v. Wainwright,* 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963), and reliance on such retroactively invalid convictions to enhance punishment was proscribed in *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1971). The district court—following the procedure adopted by the Fifth Circuit in *Lipscomb v. Clark,* 468 F.2d 1321 (5th Cir. 1972)—disposed of Farrow's *Tucker* contention saying "that even if all challenged priors are disregarded the sentence would be the same in

this case," *Farrow v. United States,* 373 F.Supp. 113, 117 (S.D.Cal.1974). We have taken this case en banc to delineate the procedure for district courts to follow when a convict files a § 2255 motion claiming a *Tucker* violation.[1]

I

## Tucker *and its Progeny*

In *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the Supreme Court affirmed the decision of a panel of this Circuit, 431 F.2d 1292 (9th Cir. 1970), and remanded to the trial court for reconsideration of the defendant's sentence where the trial court had given explicit consideration to two prior convictions which were later held to be invalid under *Gideon.* The Court relied in part on its decision in *Burgett v. Texas,* 389 U.S. 109, 115, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), that "[t]o permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case." 404 U.S. at 449, 92 S.Ct. at 593.

The Court made clear that its decision was not meant to limit the wide discretion that a trial judge in the federal judicial system generally has in determining what sentence to impose, or to restrict the kind or source of information that he may consider in making that determination.[2] Instead,

1. This appeal was originally decided by a panel of this Circuit on September 24, 1976, together with a separate but related appeal in *Leano v. United States.* That decision disposed of the *Farrow* appeal on the basis of new and elaborate procedures, the author of this opinion dissenting as to those procedures and the result. *Leano* was unanimous.

   As a result of extensions of time granted the Government to file petitions for rehearing and a long voting procedure for en banc consideration, the original panel opinion was not withdrawn until April 14, 1977, when we granted rehearing en banc in *Farrow* only. During this time at least one district court cited the panel opinion and dealt with it. *See Elliott v. United States,* 434 F.Supp. 774 (N.D.Cal.1977). Moreover, since the parties never sought rehearing in *Leano,* the order in that case was not withdrawn, and mandate issued to the district court pursuant to the unanimous decision of the panel. For these reasons, we emphasize that the

withdrawn panel opinion in the consolidated cases of *Leano v. United States* and *Farrow v. United States* is overruled to the extent that it is inconsistent with this opinion. *See* note 20 *infra.*

2. The Court cited with approval its decisions in *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (sentencing judge may exercise "wide discretion in the sources and types of evidence used" in determining punishment, 337 U.S. at 246, 69 S.Ct. at 1082) and *North Carolina v. Pearce,* 395 U.S. 711, 723, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (sentencing judge may consider evidence from trial itself, presentence report, defendant's prison record, "or possibly from other sources"), as well as the decisions of the Courts of Appeals in *United States v. Trigg,* 392 F.2d 860, 864 (7th Cir. 1968) (sentencing judge may rely on "outside information from non-identified sources" without disclosing such information to defend-

the Court emphasized that in *Tucker,* it was dealing with "a sentence founded at least in part upon misinformation of constitutional magnitude," rather than one imposed in the informed discretion of the trial judge. 404 U.S. at 446–47, 92 S.Ct. at 592. The "real question," according to the Court, was whether the original sentence might have been different if the sentencing judge had known that two of the defendant's prior convictions were unconstitutionally obtained. *Id.* at 448, 92 S.Ct. 589.

■ A successful challenge to a presumptively valid sentence based on *Tucker* thus requires three elements: (1) a prior conviction rendered invalid by *Gideon* ; (2) the sentencing judge's mistaken belief that the prior conviction was valid; and (3) enhancement of the defendant's sentence because of it. In *Tucker,* the existence of the first two elements was clear from the record, and the case was remanded for the trial judge to resolve whether the third element was also present.

Following *Tucker,* a trial judge faced with a similar § 2255 motion to vacate sentence could very simply "reevaluate" and "reconsider" the original sentence, as that case instructs,[3] to decide whether it was enhanced by his mistaken reliance on the invalid priors. *See, e. g., Wheeler v. United States,* 468 F.2d 244, 245 (9th Cir. 1972).[4] In many cases since *Tucker,* however, the invalidity of the prior convictions was not conclusively determined at the time of the defendant's § 2255 motion, as it was in *Tucker.* The procedure to be followed in disposing of the motion in these situations, where the invalidity of the defendant's prior convictions is only alleged, was not immediately clear.

The Fifth Circuit was the first to address this problem directly. In *Lipscomb v.*

*Clark,* 468 F.2d 1321 (5th Cir. 1972), that court dealt with it as follows:

> First, the district court should review the records involved in this conviction and determine if, treating the state convictions alleged to have been unconstitutional as void and thus not to be considered in sentencing, the [original] sentence would still be the appropriate sentence . ' .. If [so], an order so setting forth would seem sufficient to comply with the requirements of *Tucker.* If, on the other hand, the district court finds that . . . the [original] sentence would not be appropriate, then it should grant petitioner an evidentiary hearing and allow him to present evidence on his claim that the prior convictions in question were unconstitutional due to *Gideon.* If the district court is convinced of the validity of petitioner's allegations after such a hearing, it may then properly resentence.

*Id.* at 1323. The Fifth Circuit's approach of reconsidering the sentence without reliance on the allegedly invalid priors in order to determine whether a hearing on their validity is necessary was adopted just six weeks after *Lipscomb,* apparently independently, by the Eighth Circuit in *McAnulty v. United States,* 469 F.2d 254 (8th Cir. 1972). That case involved a § 2255 motion which asserted that the sentencing judge had given explicit consideration to three prior felony convictions alleged to be invalid under *Gideon.* The Eighth Circuit affirmed the following ruling by the district judge:

> Even assuming that petitioner's contentions are correct in that these previous convictions are invalid . . . it does not become necessary to resentence petitioner. . . .
>
> [T]his judge (who was the sentencing judge) was and still is of the opinion that

---

ant); *Davis v. United States,* 376 F.2d 535, 538 (5th Cir. 1967) (sentencing judge may rely on hearsay evidence of prior convictions); *Cross v. United States,* 122 U.S.App.D.C. 380, 382, 354 F.2d 512, 514 (1965) (sentencing judge may take into account "wide range of facts and impressions gleaned from a variety of sources," at 383, 354 F.2d at 515); *United States v. Doyle,* 348 F.2d 715, 721 (2d Cir. 1965) (hearsay evidence of unproved criminal activity not passed on by a court may be considered in

sentencing); *United States v. Magliano,* 336 F.2d 817, 822 (4th Cir. 1964) ("everything of possible pertinency may be considered, though it has no competency as proof of what it purports to indicate").

3.  *See* 404 U.S. at 448–49, 92 S.Ct. 589.

4.  *See also United States v. Cardi,* 519 F.2d 309, 312 (7th Cir. 1975); *Gandy v. United States,* 502 F.2d 564 (5th Cir. 1974).

regardless of any invalidity or absence of previous convictions, under the facts and circumstances of this case, six years was the appropriate sentence for this conviction . . . . Thus, no prior convictions or materially false assumptions enhanced petitioner's sentence.

*McAnulty v. United States,* 341 F.Supp. 927, 928–29 (E.D.Mo.1972).

We had our first opportunity to deal with the question shortly after *Lipscomb* and *McAnulty,* and chose to follow the approach of those cases. In *United States v. Eidum,* 474 F.2d 581 (9th Cir. 1973), the defendant brought a § 2255 motion to modify his sentence, alleging that three of his prior convictions were defective. The district court denied the motion without a hearing into the validity of the priors, stating that the challenged convictions constituted "a very insignificant part of a very long criminal record." 474 F.2d at 582. We affirmed the sentencing judge's finding of no enhancement on the basis of *Tucker,* both because "the judge's own estimation of the deleterious impact of the prior convictions on his determination of sentence" would not be refuted on appeal, and because the record showed that the judge did not consider the challenged priors in imposing sentence. *Id.*

Following the independent adoption of this approach by three Circuits, including our own, the Fourth Circuit had occasion to rule on the question in *Brown v. United States,* 483 F.2d 116 (4th Cir. 1973). *Brown,* too, accepted the *Lipscomb* approach of reconsidering the sentence without reliance on the allegedly invalid priors in deciding whether a hearing on their validity is necessary; but it added the requirement that if a hearing is necessary (i. e., if the original sentence would have been different had the

judge known that the priors were invalid), and if the challenge is to the validity of state convictions, then the § 2255 proceedings should be dismissed as premature, and the validity of the priors determined in collateral proceedings directly attacking them. This suggestion that the federal courts may not pass on the constitutional validity of prior state convictions under *Gideon* without requiring initial resort to the state courts of conviction was rejected by the Fifth Circuit just two weeks later in *Mitchell v. United States,* 482 F.2d 289, 292–94 (5th Cir. 1973), the court there noting:

> The *Tucker* opinion itself contains no requirement that a defendant return to the court or state of a prior conviction to secure a ruling of invalidity to support his § 2255 motion nor any hint that Tucker had exhausted Louisiana and Florida procedures for attacking any of the three convictions challenged in that case. [Footnote omitted.] . . . Since the Supreme Court affirmed the Ninth Circuit's order remanding the case for resentencing "without consideration of any prior convictions [invalid under *Gideon*]," and did not suggest that the determination of the third conviction's validity should be made in a state court before resentencing, it seems apparent that the determination was to be made in the district court.

*Id.* at 293.[5]

The *Lipscomb*-sans-*Brown* formulation of *Mitchell* was later successively adopted by the Tenth Circuit in *United States v. Green,* 483 F.2d 469 (10th Cir.), *cert. denied,* 414 U.S. 1071, 94 S.Ct. 583, 38 L.Ed.2d 477 (1973), the First Circuit in *United States v. Sawaya,* 486 F.2d 890 (1st Cir. 1973), the Second Circuit in *Wilsey v. United States,* 496 F.2d 619 (2d Cir. 1974), and the Third

**5.** A further exposition of the reasons against the *Brown* exhaustion requirement may be found in *United States ex rel. Fletcher v. Walters,* 526 F.2d 359, 361–62 (3d Cir. 1975). However, this requirement was, contemporaneously with *Mitchell* two years earlier, accepted by the Eighth Circuit in two cases decided the same day, *Young v. United States,* 485 F.2d 292, 294 (1973), and *Ryan v. United States,* 485 F.2d 295, 296 (1973). But the Eighth Circuit's sub-

sequent decision in *Stead v. Link,* 540 F.2d 923, 925–26 (1976), requiring exhaustion only under the "exceedingly complicated" procedural circumstances and because the appellant had by then "almost concluded the process of exhausting his state remedies," may mark a departure from its acceptance of the exhaustion requirement. Indeed, Judge Bright's concurrence in *Stead* explicitly rejected such a requirement.

Circuit in *United States v. Radowitz,* 507 F.2d 109 (3d Cir. 1974). Then, five months after *Radowitz,* the Fourth Circuit—while affirming *Brown's* adoption of the *Lipscomb* procedure where the § 2255 judge finds no enhancement—quietly moved away from the *Brown* exhaustion requirement where the judge found that the sentence would have been different, in *Stepheney v. United States,* 516 F.2d 7 (4th Cir. 1975) (en banc). In that case one of the appellants alleged that he was sentenced on a criminal record containing invalid prior federal and state [6] convictions. The Fourth Circuit concluded that in dismissing the motion, the district court judge had not clearly stated whether the length of the original sentence was unaffected by the allegedly invalid priors, and remanded for a specific finding on this question. Departing from *Brown,* however, the appellate court went on to say that if the finding was that the sentence would have been different, *"Tucker* requires that the defendant *either* be resentenced without consideration of the [allegedly invalid] prior conviction *or* that further proceedings be permitted to determine the validity or invalidity of the prior convictions." 516 F.2d at 9 (emphasis added). In *Stepheney,* therefore, the Fourth Circuit

dispensed with its holding in *Brown* that where enhancement from potentially invalid state convictions is found, a motion attacking sentence must be dismissed as premature and state procedures first utilized to collaterally challenge the validity of the priors.

Only three Circuits remained to consider the question and make the adoption of *Lipscomb* unanimous. The Seventh Circuit did so in *Crovedi v. United States,* 517 F.2d 541, 546 (7th Cir. 1975), after outlining several of the decisions cited above, and the Sixth Circuit next adopted the *Lipscomb* procedure (expressly adopting as well the *Mitchell* rejection of the exhaustion requirement) in *Reynolds v. United States,* 528 F.2d 461, 462–63 (6th Cir. 1976). The District of Columbia Circuit apparently has not as yet had such a case.

In addition to the universally consistent approval of *Lipscomb*-type procedures following their initial adoption in the other Circuits,[7] we up to now have followed the lead of *Eidum* in our own Circuit. In *Dukes v. United States,* 492 F.2d 1187, 1188 (9th Cir. 1974), relying on *Eidum,* we affirmed the denial of a hearing on appellant's § 2255 motion alleging that his sentence was based in part on allegedly invalid

---

**6.** *See* 516 F.2d at 10 (Widener, J., concurring and dissenting).

**7.** All ten Circuits that have considered the question have continued to adhere to their adoption of the *Lipscomb* approach. In the First Circuit, following *Sawaya, see Saville v. United States,* 524 F.2d 654, 655 (1975); *O'Shea v. United States,* 491 F.2d 774, 778, *overruled on other grounds, Wingo v. Wedding,* 418 U.S. 461, 473 n. 19, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974). In the Second Circuit, following *Wilsey, see Ferranto v. United States,* 507 F.2d 408, 409 (1974). In the Third Circuit, following *Radowitz, see United States ex rel. Fletcher v. Walters,* 526 F.2d 359, 361 (1975). In the Fourth Circuit, following *Stepheney, see Wren v. United States,* 540 F.2d 643 (1975). In the Fifth Circuit, following *Lipscomb, see Jerkins v. United States,* 530 F.2d 1203, 1204 (1976); *Jordan v. United States,* 526 F.2d 349, 350 (1976); *Garrison v. United States,* 524 F.2d 920 (1975); *La Bar v. United States,* 522 F.2d 202, 203 (1975); *Barnes v. Estelle,* 518 F.2d 182, 183 (1975) (state sentence); *Thomas v. Savage,* 513 F.2d 536, 539 (1975) (same); *United States v. Gaither,* 503 F.2d 452, 453 (1974); *Gandy v. United States,* 502 F.2d 564, 565

(1974); *Baker v. United States,* 494 F.2d 508, 509 (1974); *Torres v. United States,* 490 F.2d 862 (1974); *Mitchell v. United States,* 482 F.2d 289, 291–92 (1973); *Haynie v. United States,* 474 F.2d 1051, 1052 (1973); *Russo v. United States,* 470 F.2d 1357, 1358–59 (1972). *Reynolds v. United States,* 528 F.2d 461 (1976), remains the law in the Sixth Circuit. In the Seventh Circuit, following *Crovedi, see United States v. Cardi,* 519 F.2d 309 (1975). In the Eighth Circuit, following *McAnulty, see* note 5 *supra* and *United States v. Belle,* 525 F.2d 25, 26 (1975); *Irby v. Missouri,* 502 F.2d 1096, 1099 (1974) (en banc) (state sentence), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2213, 48 L.Ed.2d 822 (1976); *Peterson v. United States,* 493 F.2d 478 (1974); *United States v. Simon,* 488 F.2d 1094, 1095 (1973). In our own Circuit, following *Eidum* and preceding the withdrawn panel opinion in this case, *see Wilson v. United States,* 534 F.2d 130 (9th Cir. 1976) and *Dukes v. United States,* 492 F.2d 1187, 1188 (9th Cir. 1974), discussed *infra.* In the Tenth Circuit, following *Green, see Hampton v. United States,* 504 F.2d 600, 604 (1974); *Johnson v. United States,* 485 F.2d 240, 242 (1973).

priors, where the § 2255 judge found that "little thought was given" to the presentence report containing the priors—i. e., that there had been no enhancement therefrom. And in *Wilson v. United States,* 534 F.2d 130 (9th Cir. 1976), we again approved *Eidum* in affirming the denial of a § 2255 hearing where the district judge stated at the time of the § 2255 motion that

> [t]he Court did not rely on petitioner's previous record of convictions in determining the sentence imposed. Other information contained in the presentence report and the gravity of the six offenses petitioner was convicted of at the time formed the basis of the Court's decision.

534 F.2d at 133.

The *Lipscomb* procedure does not automatically insulate the § 2255 judge's decision on the issue of enhancement from appellate review in our own nor, we think, in any other Circuit. Rather, where the district judge's disclaimer of reliance on the invalid priors is in fact contradicted by the record, we have held that the case must be remanded for resentencing without consideration of any prior conviction invalid under *Gideon. Leano v. United States,* 494 F.2d 361 (9th Cir. 1974). Far from representing a departure from *Eidum* and *Dukes, Leano* represented an exception to the procedures in those cases where there was "no

support in the record for the court's statement that it had not relied on the prior," and indeed, "it was clear that the trial judge imposed the ten-year sentence *because of* the prior conviction." *Wilson v. United States,* 534 F.2d at 131 (emphasis added).[8]

Given the consistent and unanimous approval of *Lipscomb*-type procedures among the ten Circuits that have considered the question, including our own, the use of those procedures by the district court in this case might be affirmed without need of saying more. However, because it was our purpose in taking this case en banc to clarify the law, and because of dissent from the adoption of *Lipscomb* in this case as well as in the past in this Circuit,[9] we now carefully outline the procedure for district courts to follow in § 2255 motions claiming *Tucker* violations and the rationale therefor.

## II

### *Use of Another Judge to Hear § 2255 Tucker Petitions*

None of the nine other Circuits that have adopted the *Lipscomb* procedure has held that § 2255 *Tucker* motions must be heard by a new judge rather than by the original sentencing judge.[10] However, this requirement has in the past been urged by two judges of our Circuit.[11] For the rea-

---

8. Moreover, in such a case it would appear best to depart from the usual procedure and remand to a new judge for resentencing. *See* the discussion of *Leano* at note 20 *infra.*

9. *See Wilson v. United States,* 534 F.2d 130, 134 (9th Cir. 1976) (Hufstedler, J., dissenting); *Elliott v. United States,* 434 F.Supp. 774, 777–84 (N.D.Cal.1977) (detailing the withdrawn panel opinion in *Farrow*).

10. *See* cases cited at note 7 *supra.*

11. *See* Judge Hufstedler's dissent to *Wilson v. United States,* 534 F.2d at 139. Judge Koelsch's similar position in the withdrawn panel opinion in this case, concurred in by District Judge McNichols, sitting on the *Farrow* panel by designation, is summarized in *Elliott v. United States,* 434 F.Supp. at 779.

The dissent to *Wilson* suggested that three other Circuits had in fact required § 2255 *Tucker* motions to be heard by a different judge. *See* 534 F.2d at 139. However, none of the cases there cited involved § 2255 *Tucker* peti-

tions: *see United States v. Schwarz,* 500 F.2d 1350, 1352 (2d Cir. 1974) (judge failed to exercise discretion in imposing sentence); *United States v. Vale,* 496 F.2d 365, 367 (5th Cir. 1974) (sentence determined without benefit of prosecution's recommendation for leniency); *United States v. Rosner,* 485 F.2d 1213, 1231 (2d Cir. 1973) (judge violated Fed.R.Crim.P. 32(a) in sentencing); *United States v. Ewing,* 480 F.2d 1141, 1143 (5th Cir. 1973) (Fed.R.Crim.P. 35 proceeding challenging sentence determined by judge without benefit of prosecution's recommendation for leniency); *United States v. Brown,* 470 F.2d 285, 288–89 (2d Cir. 1972) (judge failed to exercise discretion on individual basis in refusing to disclose presentence report); *United States v. Bishop,* 469 F.2d 1337, 1348 (1st Cir. 1972) (sentence imposed pursuant to constitutionally infirm statute), *overruled by Marshall v. United States,* 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974); *United States v. Picard,* 464 F.2d 215, 220 (1st Cir. 1972) (failure to disclose portions of presentence report relied on in sentencing); *Mawson v. Unit-*

sons that follow, we reaffirm our holding in *Wilson v. United States,* 534 F.2d at 133–34, that § 2255 *Tucker* petitions should ordinarily be decided by the original sentencing judge.

First, as noted in *Wilson,*[12] the Supreme Court's *Tucker* opinion clearly contemplated that the § 2255 petition would be heard by the same judge, as evidenced by the statement that:

It would be . . . callous to assume, now that the constitutional invalidity of the respondent's previous convictions is clear, that *the trial judge will upon reconsideration* "undoubtedly" impose the same sentence *he imposed* in 1953.

*United States v. Tucker,* 404 U.S. at 449 n.8, 92 S.Ct. at 593 (emphasis added).

■ Second, the history of § 2255 demonstrates that motions under that section are properly presented to the original sentencing judge. In *Carvell v. United States,* 173 F.2d 348 (4th Cir. 1949), the court noted that it was the very purpose of Congress in enacting § 2255 the previous year "to avoid the unseemly practice of having attacks upon the regularity of trials made before another judge," not the less because the original sentencing judge "is familiar with the facts and circumstances surrounding the trial," *id.* at 348–49.[13]

Following its decision in *Carvell,* the Fourth Circuit conducted a thorough exposition of the history of § 2255 with respect to this question in *United States v. Smith,* 337 F.2d 49 (4th Cir. 1964), *cert. denied,* 381 U.S. 916, 85 S.Ct. 1542, 14 L.Ed.2d 436 (1965), concluding:

An analysis of section 2255, its legislative history and the cases subsequent to Carvell which have interpreted it, convinces us that one of the primary purposes of that section was to make it possible for the judge to rule upon motions in the nature of habeas corpus petitions attacking the validity and regularity of prior proceedings before him.

*Id.* at 52. Of particular note is the observation in *Smith* that

[i]n view of the large number of districts which then had only one judge, Congress [in requiring § 2255 motions to be brought to "the court which imposed the sentence"] obviously considered it desirable that district judges be required to review proceedings over which they had presided.

*Id.* at 53.[14] The purpose of § 2255 to have motions thereunder brought before the original sentencing judge where possible was also emphasized in *Mirra v. United States,* 379 F.2d 782, 788 (2d Cir.), *cert. denied,* 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967), a position the Second Circuit reiterated in *Panico v. United States,* 412 F.2d 1151 (2d Cir. 1969), *cert. denied,* 397 U.S. 921, 90 S.Ct. 901, 25 L.Ed.2d 102 (1970). There, the court stated that "[o]ne of the purposes for which Con-

---

ed States, 463 F.2d 29, 31 (1st Cir. 1972) (sentence determined without benefit of prosecution's recommendation for lenity); *Halliday v. United States,* 380 F.3d 270, 272–74 (1st Cir. 1967) (voluntariness of guilty plea); *Williams v. United States,* 380 F.Supp. 503, 505 (E.D.Pa. 1974) (new judge heard § 2255 motion where sentencing judge had died).

Indeed, the practice in the three Circuits from which the above-cited cases were taken is ordinarily to assign § 2255 *Tucker* motions to the original sentencing judge. *See, e. g., Ferranto v. United States,* 507 F.2d 408 (2d Cir. 1974); *United States v. Gaither,* 503 F.2d 452, 453 (5th Cir. 1974); *O'Shea v. United States,* 491 F.2d 774, 778–80 (1st Cir. 1974).

**12.** *See* 534 F.2d at 133.

**13.** The panel of the Fourth Circuit that decided *Carvell* included Chief Judge John J. Parker,

chairman of the Judicial Conference committee that drafted § 2255. *See also* Parker, "Limiting the Abuse of Habeas Corpus," 8 F.R.D. 171, 175 (1949) (§ 2255 requires the attack upon sentence be made in the sentencing court "where the facts with regard to the procedure followed are known to the court officials").

**14.** *See also* the several cases cited in *Smith* interpreting § 2255 "as authorizing the sentencing judge to entertain and determine motions filed thereunder," 337 F.2d at 53; *Walters v. United States,* 404 F.Supp. 996 (S.D.N.Y.1975) (accord); *Woods v. Rodgers,* 275 F.Supp. 559, 561 (D.D.C.1967) ("[t]he purpose of Section 2255 was to effect a change in the law whereby the Judge whose proceedings were being attacked would in the first instance hear and determine the validity of the attack").

gress passed Section 2255 was to make use of the personal observations of the trial judge," 412 F.2d at 1155–56.

Third, the Supreme Court recently approved this interpretation of § 2255 in *Blackledge v. Allison*, 431 U.S. 63, 74 n.4, 97 S.Ct. 1621, 1628, 52 L.Ed.2d 136 (1977), wherein it noted:

Unlike federal habeas corpus proceedings, a motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner.

Fourth, while our views on policy reasons for or against such a procedure in dealing with § 2255 motions would be insufficient to contradict the congressional purpose in enacting the statute and the Supreme Court's interpretation thereof, we additionally mention that sound judicial administration recommends that the original sentencing judge ordinarily hear § 2255 *Tucker* motions.

It is argued against this procedure that reconsideration of a sentence by the sentencing judge is "wholly unrealistic." [15] There is, of course, some danger that a trial judge's familiarity with the case may lead him to give only *pro forma* consideration to a § 2255 petition. Also, it is possible that since a § 2255 petition questions the propriety of the judge's previous deliberations, it may raise subtle psychological barriers to his deciding objectively whether he did rely on invalid priors in sentencing the petitioner. However, the danger that the disposition of justice may be affected by impermissible factors is not unique to *Tucker* cases. We must trust that our judges will rise above such influences—just as we are confident they do in the cases of racial or personal bias, or public or private pressure —subject, of course, to review by this court under appropriate standards.

[   ] Moreover, there may be a significant cost-saving advantage in allowing the same judge to hear § 2255 motions under normal circumstances. Having presided over the trial, observed the defendant over a time in the courtroom and perhaps under oath on the witness stand, and acquired full knowledge of the circumstances of the crime from sworn testimony, the trial judge is in a unique position to exercise that discretion generally involved in sentencing. A presentence report is not, it should be recalled, the sole basis of the sentence, but merely an aid to the trial judge. As noted in *United States v. Vandemark*, "[a] sentence can be tailored to fit an individual defendant only to the extent that the judge is aware of the major facts relevant to needed correction." 522 F.2d 1019, 1021 (9th Cir. 1975). In most cases, for a new judge to achieve a familiarity with the case comparable to that of the original judge would require wasteful delay and duplicated effort.[16]

Moreover, the original judge has unique knowledge of how much weight was given to the allegedly invalid priors in passing sentence. A new judge would not have the benefit of this knowledge as well, and might easily give too much or too little weight to those now-contested convictions.[17]

As against the criticism that the original judge might develop a psychological commitment to the correctness of the original sentence, we find it more likely that "the original judge would have every reason to welcome the opportunity to correct any inadvertent aggravation of injustices that may have been done the defendant in another court." *O'Shea v. United States*, 491 F.2d 774, 780 (1st Cir. 1974), *citing Tucker*, 404 U.S. at 448–49, 92 S.Ct. 589.

Recognizing, then, both the risks and the benefits involved in allowing the sentencing

---

**15.** *See Wilson v. United States*, 534 F.2d 130, 138 (9th Cir. 1976) (Hufstedler, J., dissenting).

**16.** *See O'Shea v. United States*, 491 F.2d 774, 779 (1st Cir. 1974).

**17.** *Id.  See also id.* at n.7 ("Indeed, if he found, as only he could, that the contested convictions

were not a significant factor in considering the original sentence no further inquiry would be necessary"); *Elliott v. United States*, 434 F.Supp. 774, 783 (N.D.Cal.1977) (where sentence depended heavily upon invalid priors, new judge would not have the ability to categorically so state and might leave original sentence untouched).

judge to undertake the hearing of a § 2255 petition and the resentencing of a successful § 2255 petitioner, on balance we find that he ordinarily will be the most competent one to do it.[18]

Finally, if the foregoing were not conclusive as to this issue, the adoption of new rules governing motions under § 2255, which by order of the Supreme Court became effective February 1, 1977, determines the question definitively for such motions filed thereafter. Rule 4 provides:

*Preliminary Consideration by Judge*

*(a) Reference to judge; dismissal or order to answer.*

The original motion shall be presented promptly to the judge of the district court who presided at the movant's trial and sentenced him, or, if the judge who imposed sentence was not the trial judge, then it shall go to the judge who was in charge of that part of the proceedings being attacked by the movant. If the appropriate judge is unavailable to consider the motion, it shall be presented to another judge of the district in accordance with the procedure of the court for the assignment of its business.

28 U.S.C.A. § 2255 (Supp.1977, Rules).

Moreover, the Advisory Committee Note to rule 4 provides considerable support for our reading of the history and purpose of § 2255 prior to the adoption of these rules:

The long-standing majority practice in assigning motions made pursuant to § 2255 has been for the trial judge to determine the merits of the motion. In cases where the § 2255 motion is directed against the sentence, the merits have traditionally been decided by the judge who imposed sentence.

28 U.S.C.A. § 2255 (Supp.1977, Rules) (Advisory Comm. Note). After observing that *Carvell,* "and its reasoning, has been almost unanimously endorsed by other courts dealing with the issue," [19] the Advisory Committee Note continues:

Subdivision (a) adopts the majority rule and provides that the trial judge, or sentencing judge if different and appropriate for the particular motion, will decide the motion made pursuant to these rules, recognizing that, under some circumstances, he may want to disqualify himself. A movant is not without remedy if he feels this is unfair to him. He can file an affidavit of bias. And there is the right to appellate review if the trial judge refuses to grant his motion. Because the trial judge is thoroughly familiar with the case, there is obvious administrative advantage in giving him the first opportunity to decide whether there are grounds for granting the motion.

*Id.*

■ Accordingly, we hold that § 2255 *Tucker* petitions, whether filed before or after the effective date of the above-quoted rule, should ordinarily be decided by the original sentencing judge.[20]

---

**18.** It has long been the accepted practice in our Circuit for § 2255 motions to be considered by the sentencing judge. *See, e. g., Gravenmier v. United States,* 469 F.2d 66, 68 (9th Cir. 1972); *Battaglia v. United States,* 390 F.2d 256, 259 (9th Cir. 1968). This same practice has been followed with motions under Fed.R.Crim.P. 35 for correction or reduction of sentence, *see Cook v. United States,* 171 F.2d 567 (1st Cir. 1948), *cert. denied,* 336 U.S. 926, 69 S.Ct. 647, 93 L.Ed. 1088 (1949).

**19.** *See also* Communication from the Chief Justice of the United States, Rules of Procedure, H.Doc. No. 94–464, 94th Cong., 2d Sess. 153 (1976).

**20.** As our decisions in *Leano v. United States,* 494 F.2d 361 (9th Cir. 1974) and *Wilson v.*

*United States,* 534 F.2d 130, 133 (9th Cir. 1976) make clear, there is an important distinction between the ordinary *Tucker* case and cases in which the sentencing judge's determination of a § 2255 *Tucker* petition is inconsistent with the record. The fact that the record in *Leano* contradicted the sentencing judge's disclaimer of reliance on an allegedly invalid prior—he considered the minimum sentence to be ten years, which could not have been the case if he had disregarded the challenged conviction— was the basis for the author's concurrence in the disposition of Leano's subsequent appeal, remanding the case to a new judge for resentencing. *See* note 1 *supra.* As stated in *United States v. Robin,* 553 F.2d 8, 11 (2d Cir. 1977), "[i]n the rare case where a judge has repeatedly adhered to an erroneous view after the error is called to his attention, [citation omitted] re-

## III

### *The "Hearing" Requirement of § 2255 and Judicial Recollection*

The *Lipscomb* procedure permits the § 2255 judge to determine whether, treating the challenged prior convictions as invalid, the original sentence would still be the same, thus obviating the need for a hearing on the issue of the validity of the priors.

It has been argued that the requirement in § 2255 that a hearing be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief" precludes denying a hearing on the basis of the judge's disclaimer of reliance on the allegedly invalid priors at the time of the § 2255 motion, or on the basis of his finding at that time that a new sentence without consideration of the priors would be the same.[21] However, such an interpretation is both too literal and misapprehensive of the *Lipscomb* procedure.

In the first situation, where the judge states at the time of the § 2255 motion that he did not rely on the allegedly invalid priors during the initial sentencing, the Supreme Court has made it clear that such a statement may provide the basis for dismissal of the § 2255 motion without a hearing:

> assignment to another judge may be advisable in order to avoid 'an exercise in futility [in which] the Court is merely marching up the hill only to march right down again,' United States v. Tucker, 404 U.S. 443, 452, 92 S.Ct. 589, 594, 30 L.Ed.2d 592 (1972) (Blackmun, *J.,* dissenting)."
>
> However, it would be quite another matter to require a new judge to decide a § 2255 motion where the denial of *Tucker* relief is reversed because of an erroneous finding by the sentencing court that the challenged prior conviction is not invalid. While the need to reverse the sentencing judge on questions of his own previous mental state—his awareness of a prior mistakenly believed to be valid, or his enhancement because of it—may indeed indicate the presence of subtle psychological barriers requiring remand to a different judge, such is not the case where a determination of the nonpersonal issue of validity is reversed. A reversal on nonpersonal matters is routinely remanded to the same judge for reconsideration.

In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion, even though he could not similarly dispose of a habeas corpus petition challenging a state conviction but presenting identical allegations.

*Blackledge v. Allison,* 431 U.S. 63, 74 n.4, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977).[22] This is consistent with the rationale behind the purpose of § 2255 to have the original judge determine motions thereunder, just discussed: to take advantage of the judge's familiarity with the facts and circumstances surrounding the trial and sentencing. *See, e. g., Carvell v. United States,* 173 F.2d 348, 348–49 (4th Cir. 1949).

Moreover, as the new Rules Governing Habeas Corpus Cases now make express, it is consistent with the habeas corpus procedure under § 2254 that "the district judge . . . employ a variety of measures in an effort to avoid the need for an evidentiary hearing." *Blackledge v. Allison,* 431 U.S. at 81, 97 S.Ct. at 1632. The § 2255 motion, which was designed to afford "the same rights in another and more convenient forum," *United States v. Hayman,* 342 U.S. 205, 219, 72 S.Ct. 263, 272, 96 L.Ed. 232 (1952), must be similarly construed; and indeed, the procedural devices provided to make an evidentiary hearing unnecessary are nearly identical in the rules

---

**21.** *See Wilson v. United States,* 534 F.2d 130, 136 (9th Cir. 1976) (Hufstedler, J., dissenting) ("The sentencing judge's unsworn disclaimer that he did not rely on the invalid prior convictions is irrelevant"); *Halliday v. United States,* 380 F.2d 270, 273 (1st Cir. 1967) ("In spite of some remarks in certain cases about the judge's personal recollections we cannot believe that, unless acquiesced in, they are part of the record in a § 2255 proceeding any more than they would be in any other").

**22.** The Court distinguished its decision in *Machibroda v. United States,* 368 U.S. 487, 494–95, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), where it held that a § 2255 motion based on "purported occurrences outside the courtroom" and hence not "of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection" could not be dismissed without a hearing. 431 U.S. at 74 n.4, 97 S.Ct. 1621, at 1629.

pursuant to §§ 2254 and 2255 respectively.[23] Where the judge's own recollection enables him to answer in the negative the "real question" in *Tucker* cases—whether the original sentence might have been different if he had known that the prior convictions were invalid under *Gideon*—an evidentiary hearing is unnecessary, and it is entirely appropriate that the judge dismiss a § 2255 motion in such a case without necessitating the time and expense that a hearing would entail.[24] *Tucker*'s remand to the trial judge there presented with a § 2255 motion for "reconsideration" of his previous sentence, *see* 404 U.S. at 449, 92 S.Ct. 589, further compels this conclusion.

■■■ In the second situation, where the judge determines at the time of the § 2255 motion that a new sentence formulated without reliance on the challenged priors would nonetheless be the same, a hearing into the validity of the priors is *a fortiori* not required. In such a case the judge does not supplement the written record by relying on his own recollection of the events at issue; rather, he determines whether *from the record* the sentence might have been different if the fact of invalidity of the priors had been known at the time of sentencing. As the Fourth Circuit concluded from its confrontation with this question in its en banc decision in *Stepheney v. United States:*

> [T]he judge [need not have] an affirmative recollection of his thought processes at the time the sentence was imposed. From the record, the judge may be able

to determine that with recognition or assumption of invalidity of the questioned prior convictions, "the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding," [footnote to *Tucker*], or that the sentence was so conditioned by other factors that any such recognition or assumption would not have altered the scene. [Footnote omitted.] If the former is the situation, further proceedings are requisite; if the latter, they are not. Thus, though the judge may have no actual recollection of his thoughts at the time of sentence, if by reconstruction from the record he can say with assurance that assumption of invalidity of the questioned prior convictions, if made at the time of sentencing, would not have resulted in a lighter sentence, there need be no further inquiry and no resentencing.

516 F.2d 7, 9 (4th Cir. 1975) (en banc). Indeed, in this situation the § 2255 petitioner receives exactly the relief he asks for, and perhaps greater than that to which he would be entitled were a hearing into the validity of the priors conducted: resentencing on the basis of a record that excludes the challenged priors. This is so since, as we noted in *Wilson v. United States,* 534 F.2d at 133 n.2, the mental process used by the court in "reconsidering" the old sentence or "resentencing" is the same, and as discussed above, will ordinarily be performed by the same judge in either event.[25]

**23.** The *Blackledge* opinion cited rules 6 and 7 pursuant to § 2254, providing for discovery as well as expansion of the record to include "additional materials relevant to the merits of the petition," as examples of devices aimed at saving "the time and expense required for an evidentiary hearing." 431 U.S. at 81–82 & n.24, 97 S.Ct. at 1633 (quoting the rules and Advisory Committee Notes). Rules 6 and 7 pursuant to § 2255 are virtually identical. The Advisory Committee Notes to rules 6 and 7 pursuant to § 2254, which are made applicable to those same rules under § 2255, make it clear that the rules' purpose is to avoid an evidentiary hearing where one would be unnecessary.

**24.** *See* the discussion of the scope of such a hearing *infra.*

**25.** We note that in cases where the § 2255 judge finds that the sentence would have been different had the fact of invalidity of the priors been known at sentencing, neither the hearing requirement of § 2255 nor due process requires the judge's testimony and cross examination to determine the fact of his reliance or nonreliance on the challenged priors. Rather, the original judge, if he is deciding the motion, may make a "finding" as to his previous mental state. That this result does not violate the hearing requirement of § 2255 follows from the fact that, as we have determined, the judge may rely on his own recollection to dismiss the motion without a hearing in the first instance. Similarly, this conclusion is consistent with due process, since a defendant has no due process right to cross examine witnesses who supply

■ For these reasons we approve the *Lipscomb* procedure whereby the § 2255 judge determines whether, treating the challenged prior convictions as invalid, the original sentence would still be the appropriate sentence. The § 2255 petitioner need be afforded an evidentiary hearing into the validity of the priors only where the § 2255 judge has found that the original sentence, viewed in this light, would not be appropriate.

## IV

### Tucker *Procedures and Review*

In *Tucker v. United States,* 299 F.Supp. 1376 (N.D.Cal.1969), after the appellant there was successful in overturning two of his prior convictions on collateral attack, he brought a § 2255 motion attacking a subsequent conviction and sentence where the priors had been introduced at trial to impeach his testimony. The § 2255 judge in *Tucker* dismissed the motion neither because he found no enhancement based on his own recollection, nor because he determined that despite the invalidity of the priors, the original sentence would still be appropriate. Rather, he simply did not address the sentencing issue, erroneously assuming his finding that the use of the convictions at *trial* was harmless to be dispositive of the validity of the sentence as well. In that situation, where the § 2255 judge made no finding on the question of enhancement, we remanded because his explicit consideration of the invalid priors at sentencing made it a "reasonable probability" that the priors enhanced the sentence. That decision was affirmed by the Supreme Court in its *Tucker* opinion, and we of course adhere to it. Several other procedural issues concerning appellate review of

information relied on in sentencing. *See Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); Note, The Constitutionality of Statutes Permitting Increased Sentences for Habitual or Dangerous Criminals, 89 Harv. L.Rev. 356, 359–60 (1975). In this regard, it is important to remember that the § 2255 judge is under oath as he is performing a judicial act.

Of course, as discussed *supra,* where the § 2255 judge is unable to recall whether or to what extent he relied on the challenged priors,

*Tucker* claims, however, remain to be addressed.

*A. Determination of* Tucker *violation.* As noted *supra,* three factors are necessary to establish *Tucker* error: (1) a prior conviction rendered invalid by *Gideon;* (2) the sentencing judge's mistaken belief that the prior conviction was valid; and (3) enhancement of the defendant's sentence because of it. Following the *Lipscomb* procedure, the presence of the second and third factors will ordinarily be determined before the first issue is addressed.

The second factor contemplates, of course, that the sentencing judge was aware of the conviction as well as mistaken concerning its validity under *Gideon;* the third factor requires in addition that the sentence was in fact affected by this mistaken information. Since both are questions of the judge's previous mental state, he may answer them from his own recollection, as previously discussed. Where the judge does not have an affirmative recollection of his previous mental state, he must reconsider the appropriateness of the original sentence from reconstruction of the record, assuming the invalidity of the challenged priors.[26]

■ When the § 2255 judge finds that these two factors are present, the remaining factor—the invalidity of the priors under *Gideon*—must be determined at a hearing. Three questions must be resolved at this hearing: (1) petitioner's indigency at the time of the challenged prosecution; (2) his lack of representation at the challenged prosecution; and (3) the absence of an effective waiver of his right to counsel at the challenged prosecution.

the petitioner receives his requested relief—reconsideration of his original sentence without reliance on the priors—although in the case where the judge finds that the original sentence would be inappropriate, viewing the priors as invalid, the ensuing hearing may disclose that the priors are in fact valid and the petitioner's sentence will remain unchanged.

26. *See* note 25 *supra.*

■ On the question of indigency, the § 2255 petitioner has the burden of proof. *Kitchens v. Smith,* 401 U.S. 847, 848, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971). This burden is met where the petitioner alleges that he was indigent at the time of the challenged prosecution and the respondent does not deny the allegation, or if the allegation is denied, where the petitioner testifies to his indigency and the respondent offers no controverting evidence. *See Kitchens v. Smith,* 401 U.S. at 848–49, 91 S.Ct. 1089; *Mitchell v. United States,* 482 F.2d 289, 294–95 (5th Cir. 1973).

■ The Government carries the burden of proof on the factual issue of representation where the record shows the petitioner was not represented by counsel or is silent. As stated in *Mitchell v. United States:*

> The rule which has evolved is that when a convicted defendant who was indigent at the time of his conviction collaterally attacks the conviction on right-to-counsel grounds, and the record shows that he was not represented by counsel or is silent regarding representation of counsel, then the party which defends the conviction has the burden of proving that the defendant was represented by counsel or that he waived his right to counsel.

*Id.* at 296. *See also United States v. Radowitz,* 507 F.2d 109, 112–13 (3d Cir. 1974). However, where the record shows that the petitioner was represented by counsel, the burden is on him to impeach the record. *Mitchell,* 482 F.2d at 296; *Wilson v. Wiman,* 386 F.2d 968, 969 (6th Cir. 1967), *cert. denied,* 390 U.S. 1042, 88 S.Ct. 1634, 20 L.Ed.2d 303 (1968).

■ Once it is determined that the petitioner was without counsel, the Government must similarly carry the burden of proving waiver where the record shows no waiver or is silent, since "[p]resuming waiver from a silent record is impermissible." *Burgett v. Texas,* 389 U.S. 109, 114–15, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967); *see also United States v. Walker,* 526 F.2d 359, 363 (3d Cir. 1975); *Crovedi v. United States,* 517 F.2d 541, 543 (7th Cir. 1975); *Mitchell,* 482 F.2d at 296; *United States v. Lufman,* 457 F.2d 165, 166–67 n.2 (7th Cir. 1972). As with the question of representation, however, the petitioner bears the burden of proving that his waiver was not knowingly and intelligently made where the record shows that the trial judge offered and the petitioner declined counsel. *Carnley v. Cochran,* 369 U.S. 506, 513, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Moore v. Michigan,* 355 U.S. 155, 160–62, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); *Johnson v. Zerbst,* 304 U.S. 458, 468–69, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ Finally, following *Johnson v. Zerbst,* the proof of each factor that must be established at a § 2255 evidentiary hearing into the validity of the petitioner's prior convictions must satisfy the preponderance-of-the-evidence standard. That case established this standard as applicable to right-to-counsel questions at habeas corpus proceedings, 304 U.S. at 469, 58 S.Ct. 1019. *See also Mitchell v. United States,* 482 F.2d at 297.

■ B. *Standards of review.* As discussed above, the "reasonable probability" of enhancement standard of our *Tucker* decision governs review of § 2255 *Tucker* claims following dismissal by the district court without a specific finding on enhancement. *Accord, McGee v. United States,* 462 F.2d 243, 247 (2d Cir. 1972) (remanding where enhancement "not improbable"). Once the § 2255 judge makes a finding of no enhancement based on his own recollection, this "may not normally be overridden," *Wilson v. United States,* 534 F.2d at 132, since "the judge's own estimation of the deleterious impact of the prior convictions on his determination of sentence" will not be reversed absent clearly contradictory evidence in the record.[27] *United States v.*

---

27. In *Wilson,* the § 2255 judge's finding of no enhancement was upheld where there was a "*substantial basis* in the record on its face to support the court's statement of nonreliance,"

534 F.2d at 133 (emphasis in original). This should not, however, be construed to require reversal of the district judge's finding whenever a substantial independent basis therefor is

*Eidum,* 474 F.2d 581, 582 (9th Cir. 1973); *see Leano v. United States,* 494 F.2d 361 (9th Cir. 1974). *See also United States v. Cardi,* 519 F.2d 309 (7th Cir. 1975); *Peterson v. United States,* 493 F.2d 478 (8th Cir. 1974). No less deference should be afforded such a finding than is afforded the judge's disclaimer of reliance on prior convictions at the time of sentencing, which is of course sufficient to preclude reversal on appeal barring a clear contradiction on the record. *See, e. g., Johnson v. United States,* 485 F.2d 240 (10th Cir. 1973); *Rogers v. United States,* 466 F.2d 513 (5th Cir.), *cert. denied,* 409 U.S. 1046, 93 S.Ct. 546, 34 L.Ed.2d 498 (1972). *Cf. United States v. Hart,* 546 F.2d 798, 801 (9th Cir. 1976) (en banc) (findings of fact by the trial court in criminal cases governed by the "clearly erroneous" rule), *cert. denied,* 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 571 (1977).

▮ Where the petitioner is resentenced—either because he prevails on all three issues precedent to a *Tucker* violation, or because the judge has no recollection of the weight that might have been given the challenged priors and therefore reconsiders the original sentence on the basis of the record, following the *Lipscomb* procedure— the appropriate standard of review is abuse of discretion. *See United States v. Tucker,* 404 U.S. at 446, 92 S.Ct. 589; *United States v. Kearney,* 560 F.2d 1358, 1369 (9th Cir. 1977); *United States v. Lustig,* 555 F.2d 737, 751 (9th Cir. 1977); *United States v. Buck,* 548 F.2d 871, 877 (9th Cir. 1977); *United States v. Perri,* 513 F.2d 572, 575 (9th Cir. 1975). *See also Jorgenson v. United States,* 477 F.2d 905 (8th Cir. 1973).

## V

### *Waiver of* Tucker *Claims*

▮ The Government asserted in its brief on appeal, and again in its suggestion for rehearing en banc, that Farrow must be held to have waived his *Tucker* claim by virtue of his failure to raise his objection to certain of his prior convictions at the time of sentencing or on direct appeal. Without deciding what is the appropriate standard for disposition of these claims of waiver, we note that under the Supreme Court's decision in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), a convict's failure to comply with Fed.R.Crim.P. 32(a)(1) by presenting "any information in mitigation of punishment" at the time of sentencing may waive a subsequent § 2255 challenge to his sentence based on such information, absent a showing of cause and prejudice.[28] *Cf. Sinox v. United States,* 571 F.2d 876, 879–80 (5th Cir. 1978) (*Sykes* applicable to § 2255 proceedings involving "fundamental constitutional right"); *Jiminez v. Estelle,* 557 F.2d 506, 508–11 (5th Cir. 1977) (*Sykes* applicable to *Tucker* claims under § 2254). *Sykes* was made retroactive in *Estelle v. McDonald,* 433 U.S. 904, 97 S.Ct. 2967, 53 L.Ed.2d 1088 (1977).

Whether there exist the requisite cause and prejudice to avoid a finding of waiver has been left for the lower courts to determine on a case by case basis. *See Sykes,* 433 U.S. at 87, 97 S.Ct. 2497. In particular, the degree of attorney inadvertence that would be necessary to constitute cause for failure to raise a *Tucker* claim would have to be resolved by careful application of

not clear on the face of the record, since as *Wilson* demonstrates, the judge's finding based on his own recollection may itself provide this "substantial basis." Rather, reversal is required only in cases such as *Leano v. United States,* 494 F.2d 361 (9th Cir. 1974), where, as stated in *Wilson,* "[t]here was *no support* in the record for the court's statement that it had not relied on the prior conviction." 534 F.2d at 131 (emphasis added).

**28.** In addition to this provision of an opportunity for both the defendant and his counsel to

object to the consideration of possibly invalid priors at sentencing, rule 32 has since 1975— subsequent to Farrow's sentencing—provided in subpart (3)(A) that the court shall upon request disclose the contents of the presentence report to the defendant or his counsel, and "shall afford the defendant or his counsel an opportunity to comment thereon, and, at the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report."

*Sykes* to the particular facts at hand.[29] Thus, in many cases, an evidentiary hearing would be required.

Assuming without deciding that the *Sykes* approach is generally applicable to § 2255 proceedings, adherence to the *Lipscomb* procedure will serve in many cases to moot the question and eliminate the need for an evidentiary hearing on the issue of cause and prejudice. This will be so whenever the § 2255 judge determines that the priors did not in fact enhance the original sentence, or, with the same result, that upon reconsideration assuming the invalidity of the priors, the sentence would be the same.

■ We therefore hold that the proper procedure to be followed in § 2255 *Tucker* cases involving questions of waiver is for the § 2255 judge to first determine whether the petitioner prevails under *Lipscomb*. Only where the § 2255 judge finds that a different sentence would be appropriate and a determination of the validity of the priors becomes necessary, must the judge address the issue of waiver of *Tucker* claims. This is consistent with the interpretation of § 2255 to avoid the time and expense required for an evidentiary hearing where one would be unnecessary.[30] Accordingly, resolution of the Government's contention that Farrow waived his *Tucker* claim is not required, the district court having followed the *Lipscomb* procedure and

determined that even if the priors are invalid, Farrow's present sentence is appropriate.

## VI

### *Farrow's* Tucker *Claim*

Having approved of the *Lipscomb* procedure and outlined the rationale therefor, we affirm the district court's use of that procedure to dismiss Farrow's § 2255 *Tucker* claim without a hearing.

As noted earlier, the § 2255 judge's finding pursuant to *Lipscomb* that assuming the invalidity of the challenged prior convictions, the sentence would be the same—a finding not based on the judge's own recollection and equivalent to a new sentencing to the same term—will be reversed on appeal only if imposition of the reconsidered sentence constitutes an abuse of discretion. In Farrow's case, reimposition of the original sentence was well within the district court's discretion and is amply supported by the record.

■ Viewing Farrow's record with the assumption that the challenged prior convictions are invalid,[31] the § 2255 judge was faced with an individual validly convicted of burglary ten years before the subject offense and sentenced to prison for six months to fifteen years therefor. Five years after his burglary conviction, Farrow was again convicted of a felony, this time second degree robbery, for which he was

---

29. See *Jiminez v. Estelle*, 557 F.2d 506, 510–11 (5th Cir. 1977); Spritzer, "Criminal Waiver, Procedural Default and the Burger Court," 126 U.Pa.L.Rev. 473, 508 (1978); Note, The Supreme Court, 1976 Term, 91 Harv.L.Rev. 70, 217 (1977).

30. See note 23 *supra*.

31. The presentence report prepared by the Probation Department disclosed that Farrow had the following record of convictions:

| Date | Offense | State | Sentence |
|---|---|---|---|
| (1) 12–12–49 | Forgery–1st degree | Washington | 30 days, 2 yrs. probation |
| (2) 3–23–50 | Forgery, grand theft auto, escape | California | 1–14 years in prison |

| Date | Offense | State | Sentence |
|---|---|---|---|
| (3) 12–20–52 | 2 counts burglary, forgery | California | 1–15 years in prison |
| (4) 11–9–56 | Burglary | California | 6 months to 15 years in prison |
| (5) 10–1–59 | Burglary | California | 6 months to 15 years in prison |
| (6) 5–26–64 | Robbery, 2nd degree | California | 1 year to life |

Farrow attacked the first four of these convictions in the § 2255 proceeding below. See *Farrow v. United States*, 373 F.Supp. 113, 116 (S.D.Cal.1974).

given a sentence of from one year to life in prison. In addition, the § 2255 judge, relieved of the mistaken belief that Farrow's four additional convictions were valid, was also faced with the unproven charges underlying those invalid convictions for first degree forgery, grand theft auto, escape, and burglary.[32] Finally, the judge was apprised of the fact that Farrow had negotiated a plea bargain which allowed him to plead guilty to a "tax count" with a minimum sentence of two years and a maximum of ten years, instead of the five year minimum and twenty year maximum carried by the smuggling charges originally filed against him. Under these circumstances, there was indeed a substantial basis for the § 2255 judge's decision that a sentence of five years on the tax count and three years on the bail jump count, subject to early parole, was appropriate.

## VII

### Farrow's Remaining Contentions

In addition to the *Tucker* claim which provided the principal basis for his § 2255 petition, appellant alleges (1) that his sentence was enhanced in reliance on materially untrue information in the presentence report in violation of due process under *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); (2) that the Government failed to tell the court of his cooperation, thus precluding consideration of circumstances that might have lessened his sentence; (3) that he was rendered ineffective assistance of counsel; and (4) that he was denied the right to allocution. We affirm the district court's denial of relief on each of these grounds.

We note initially that these claims may have been waived for failure to raise them either contemporaneously or on appeal. However, since the Government has not

urged waiver of these claims, and since the district court made no finding on the issue, we examine the merits of appellant's allegations.

A. *Reliance on materially untrue information.* In *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1947), the Supreme Court reversed the conviction of a defendant who, without the assistance of counsel, "was sentenced on the basis of assumptions concerning his criminal record which were materially untrue." *Id.* at 741, 68 S.Ct. at 1255. The sentencing judge in *Townsend* read aloud a list of eight convictions, passing sentence in reliance thereon too quickly for the uncounseled defendant to object that, in fact, in two of the cases he had been found not guilty, and that the charge at the basis of a third "conviction" had indeed been dismissed. The Court stated that:

> It is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process.

*Id.*

We relied in part on the *Townsend* holding in *United States v. Weston*, 448 F.2d 626 (9th Cir. 1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972), to vacate a sentence explicitly based upon unverified, unreliable charges of very serious criminal conduct. The trial judge in *Weston* expressed his opinion that the defendant's offense itself warranted only the minimum sentence of five years. He then went on to impose the maximum sentence, twenty years, because he felt he had "no alterna-

---

**32.** *See* 18 U.S.C. § 3577; *United States v. Haygood*, 502 F.2d 166, 171–72 n.16 (7th Cir. 1974) (Stevens, J.), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 812 (1975): "If a sentencing judge does not know that a prior conviction was obtained unconstitutionally, it is error for

him to rely on such a conviction [citing *Tucker*]—but if he is fully informed, presumably even the *Tucker* holding would not preclude reliance on the underlying facts." *See also* note 2 *supra*; *United States v. Atkins*, 480 F.2d 1223, 1224 (9th Cir. 1973).

tive, in the face of . . . simply a vehement denial, but to accept as true" the uncorroborated charges in the presentence report, and because he believed the maximum was "a proper sentence if these be the facts . . . ." *Id.* at 629–31.

■ The clear teaching of *Townsend* and *Weston* is that a sentence will be vacated on appeal if the challenged information is (1) false or unreliable, and (2) demonstrably made the basis for the sentence. In the context of a § 2255 proceeding, a motion must be denied unless it affirmatively appears in the record that the court *based* its sentence on improper information. *United States v. Perri,* 513 F.2d 572, 574 (9th Cir. 1975); *Santoro v. United States,* 462 F.2d 612, 612–13 (9th Cir. 1972).

■ Farrow's presentence report contained both the Government's and the probation officer's evaluation of him as the ringleader of a large narcotics operation, and Farrow's own version in which he claimed his role was that of a "mule" occasionally paid to drive a loaded car into the

United States. In addition, Farrow's attorney was given the opportunity to rebut the ringleader allegation at sentencing, and did so.[33]

Thus, unlike *Townsend* and *Weston,* the sentencing judge was apprised of both the defendant's and the Government's version of the facts. Moreover, unlike those cases and *United States v. Perri,* 513 F.2d at 574, the court here by no means "made it abundantly clear that [the challenged information] was the basis for" its sentence. Rather, there is every reason to believe that the sentencing judge, presented with conflicting factual accounts, maintained a healthy skepticism concerning Farrow's actual role in narcotics traffic, sentencing him instead on the basis of the offense committed and his counsel's request for leniency.[34]

■ There is no question that the reception of evidence such as that included in appellant's presentence report is proper. *Williams v. New York,* 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *United States v. Doyle,* 348 F.2d 715, 721 (2d Cir.), *cert. denied,* 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965); *United States v. Magli-*

---

33. *See* note 34 *infra.*

34. The following colloquy between the judge and Farrow's attorney occurred at sentencing:

THE COURT: I have read and considered the Probation Officer's report. Do you have anything to say on behalf of your client?

MR. ZUMWALT: Just a couple of comments, Your Honor. I don't usually come in here and argue mercy of the Court, but I am afraid that in this particular case that is about all I have to say except that I am sure the Court will be merciful in this case—except to say that the Probation Report did not show any facts to substantiate that Mr. Farrow was the ringleader in the smuggling venture.

Mr. Yodis was the ringleader and I think the United States Attorney's report shows that, the report in his file. Mr. Farrow was involved, of course, and he was involved heavily, but he was not the ringleader and I would disagree with that part of the report.

\* \* \* \* \* \*

Mr. Farrow will have to go to jail, no question about it, and on the bail jump charge

too, but I would suggest to the Court that if he is sentenced to prison that it be under 4208(a)2, and that he be given something as indicated in the probation report, something a little more than the minimum but not a long period of incarceration. . '. .

Following this the Government's attorney, after stressing Farrow's "obvious key role in organizing a smuggling venture over a considerable amount of time," stated that she saw "very few reasons why he should be given anything other than the maximum sentence in this case." The maximum penalty for appellant's convictions was 15 years in prison and a $25,000 fine, and the minimum two years in prison without fine. The judge then sentenced Farrow to eight years without fine—five years on the tax count and three years for bail jump—subject, as Farrow's counsel requested, to the early parole provisions of 18 U.S.C. § 4208(a)(2).

Subsequently, in a letter appended to Farrow's own motion, his attorney stated, "I do not believe the court sentenced you on the basis of being a ringleader. A great deal is said by the government attorney concerning this, but there is nothing in the record that indicates that the court sentenced you on this basis."

ano, 336 F.2d 817, 822 (4th Cir. 1964); 18 U.S.C. § 3577. As stated in *United States v. Doyle,* 348 F.2d at 721, cited with approval in *United States v. Tucker,* 404 U.S. at 447, 92 S.Ct. 589, hearsay evidence of unproved criminal activity not passed on by a court may be considered in sentencing. It follows that due process does not require an evidentiary hearing to establish the veracity of all information in a presentence report before it may be considered by the sentencing judge. What due process does require is that unwarranted weight not be given to such information to enhance sentence. The manner of rebutting hearsay evidence rests in the informed discretion of the trial judge, and where undue reliance is not placed thereon, verbal explanation or comment is sufficient. *See, e. g., United States v. Williams,* 499 F.2d 52, 55 n. 4 (1st Cir. 1974); *United States v. Rosner,* 485 F.2d 1213, 1230 (2d Cir. 1973), *cert. denied,* 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974).

In Farrow's case, as has been noted, his version of the facts was presented both in the presentence report and by his counsel at sentencing. There is no basis for presuming that the sentencing judge might have given undue weight to the Government's allegations; and if the record demonstrates anything, it is that the judge accepted Farrow's version of the facts. It thus appears conclusively from the record that the sentencing judge acted within his discretion, and that appellant is entitled to no relief. *United States v. Greenbank,* 491 F.2d 184,

189 (9th Cir.), *cert. denied,* 417 U.S. 931, 94 S.Ct. 2642, 41 L.Ed.2d 234 (1974). The district court's dismissal of the § 2255 motion without an evidentiary hearing on this ground was therefore proper.

■ B. *Cooperation with BNDD agent.* Appellant's § 2255 motion alleged that the Government failed to tell the court that he provided an agent of the Bureau of Narcotics and Dangerous Drugs with information leading to the seizure of several loads of marijuana.[35] In explanation of his own failure to provide this information when given the opportunity to do so at sentencing, appellant stated that it could not have been aired in open court due to the dangers he would face as an informant. However, the motion gave no reason for appellant's failure to request an *in camera* proceeding at sentencing for this purpose. The district court ruled that the Government is under no duty to speak on behalf of a defendant absent the assumption of that duty as part of a plea bargain, and that the obligation to inform the court of the alleged cooperation in this case was on the defendant.

For the first time on appeal, Farrow argues that he was misled by his counsel into believing that the Government had in fact presented this information to the court *in camera,* a position contradicted by the record.[36] Even accepting this untimely argument, however, appellant's motion presents no more than conclusory allegations, unsupported by facts and refuted by the record.[37]

---

**35.** Appellant does not allege that the Government's attorneys promised during plea bargaining or at any point to present this information in mitigation of sentence, but only that the BNDD agent promised to have the U.S. Attorney "consider" it.

**36.** Appellant's § 2255 motion, prepared by his counsel, makes it clear that counsel did not know whether there had been such an *in camera* proceeding. Appellant's reply to the Government's opposition to his motion contains nothing to suggest that appellant was misled by his former counsel.

**37.** Appellant has failed to provide specific factual allegations such as when and where either the alleged promise by the BNDD agent or the alleged statements by his counsel were made, the terms of the promise or the substance of his counsel's statements, or the identification of a witness to either event. *See Blackledge v. Allison,* 431 U.S. 63, 75–76, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *Diamond v. United States,* 432 F.2d 35, 40 (9th Cir.), *superseding* 422 F.2d 1313 (9th Cir.), *cert. denied,* 397 U.S. 1079, 90 S.Ct. 1531, 25 L.Ed.2d 815 (1970). Against this, the record contains appellant's sworn statements before the district court that he was

It is well established that in such instances a § 2255 petitioner is not entitled to an evidentiary hearing. *Forrens v. United States,* 504 F.2d 65, 67 (9th Cir. 1974); *United States v. Edmo,* 456 F.2d 240, 241–42 (9th Cir. 1972); *Smith v. United States,* 454 F.2d 1330, 1332 (9th Cir. 1972); *Sasser v. United States,* 452 F.2d 1104, 1106 (9th Cir. 1972); *Reed v. United States,* 441 F.2d 569, 572–73 (9th Cir. 1971); *United States v. Mills,* 423 F.2d 688, 689 (9th Cir.), *cert. denied,* 399 U.S. 915, 90 S.Ct. 2218, 26 L.Ed.2d 572 (1970); *Macon v. United States,* 414 F.2d 1290, 1291 (9th Cir. 1969); *Eaton v. United States,* 384 F.2d 235, 237 (9th Cir. 1967); *Earley v. United States,* 381 F.2d 715, 716 (9th Cir. 1967).

Accordingly, the district court's dismissal of the § 2255 motion without a hearing on this ground was proper.

C. *Ineffective assistance of counsel.* Appellant's reply to the Government's opposition to his § 2255 motion, written by different counsel than prepared the original motion, raised the additional argument that appellant's original counsel was ineffective. The alleged bases for this claim are (1) appellant's counsel did not inform him of the contents of the presentence report; (2) counsel promised him he would receive a sentence of no more than five years in exchange for his guilty plea; (3) counsel's arguments in appellant's behalf at sentencing were weak; and (4) counsel failed to timely perfect the filing of a motion under Fed.R.Crim.P. 35 for reduction of sentence.[38] Each of these bases is either legally insufficient to state a claim for ineffective assistance, insufficiently specific, or directly refuted by the record.

■ In order to establish *prima facie* that the advice of counsel is not "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970), appellant's allegations, taken as true where based on occurrences outside the record, must show at least that there was a failure of counsel to render reasonably effective assistance. *de Kaplany v. Enomoto,* 540 F.2d 975, 987 (9th Cir. 1976) (en banc), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977). As in *de Kaplany,* we need not consider here whether a lower standard of measuring the adequacy of counsel would be appropriate, since under the reasonably effective assistance standard appellant's allegations cannot establish that he was deprived of the effective assistance of counsel. *See United States v. Kearney,* 560 F.2d 1358, 1368 (9th Cir. 1977); *United States v. Lemon,* 550 F.2d 467, 473 (9th Cir. 1977). The denial of relief without a hearing was therefore appropriate.

■ Assuming the truth of appellant's first allegation, no prejudice could have resulted therefrom. As previously discussed, the Government's assertion that appellant was the ringleader, contained in the probation report, was counterbalanced by the inclusion in the same report of Farrow's own version of the facts and by counsel's oral rebuttal of the Government's account at sentencing. Nor could appellant have been prejudiced by counsel's failure to discuss with him the inclusion of allegedly invalid prior convictions in the report, since that is the primary basis of the instant § 2255 proceeding.

■ Appellant's allegation that counsel promised him a sentence of no more than five years is wholly unsubstantiated and refuted by the record. At the time of the

---

not promised any reward or lesser sentence in order to induce his plea, that he had no questions relating to his plea or sentencing, that he had nothing to say in his behalf before sentencing, and that he was satisfied with the services of his counsel. *See Cascio v. United States,* 429 F.2d 581, 582 (9th Cir. 1970).

**38.** As noted earlier, appellant has alleged for the first time on appeal that counsel misled him concerning the Government's presentation of mitigating information to the court *in camera.* This allegation is both untimely and unsubstantiated. *See* notes 36 and 37 *supra.*

plea of guilty, the plea bargain was placed on the record by defense counsel as follows:

> [A]ll of the outstanding charges and other counts will be dismissed except, of course, the ones just pleaded to and that the defendant—the U.S. Attorney will recommend that Defendant do no more than a maximum of *ten years* on the charges pleaded to.

(Emphasis added.) Following a long and thorough explanation of the gravity of the charges against him that would be dropped and the maximum penalty of fifty years that could be imposed therefor, the judge asked appellant personally whether he understood that *despite* his counsel's indication that the court would not sentence him in excess of *ten* years, the court was not bound by this and could impose a *greater* sentence. Appellant clearly stated under oath that he understood and accepted this.

■ Appellant's third allegation, that counsel's arguments at sentencing were weak, is clearly refuted by the record. As noted by the district court:

> Farrow's attorney constantly demonstrated a high level of competence and a true desire to act in the best interests of his client. His comments at the time of sentencing, which Farrow now attacks, were calculated to mitigate the sentence for a crime [to] which petitioner had already entered a plea of guilty.

*Farrow v. United States,* 373 F.Supp. 113, 120 (S.D.Cal.1974).

■ Finally, assuming that the failure to timely file a motion to reduce sentence was due to counsel's error, no prejudice could have resulted therefrom. We have specifically declined to find a waiver of rights based on this failure, and appellant has pursued the identical relief through the instant § 2255 motion.

The district court's dismissal of the appellant's charges of ineffective assistance of counsel was therefore proper.

D. *Right of allocution.* Appellant's final contention, that he was denied the right to speak out in his own behalf at sentencing, is factually untrue as the record unequivocally demonstrates. The district court's determination on this point is affirmed.

### VIII

### *Conclusion*

The district court's denial of appellant's § 2255 petition is

AFFIRMED.

Judge BROWNING concurs in Parts I, II, VII and VIII of the majority opinion and in the judgment thereof.

HUFSTEDLER, Circuit Judge, dissenting; in which Judge ELY concurs:

Farrow alleged that his sentence had been enhanced by the sentencing court's consideration of prior convictions constitutionally invalid under *Gideon v. Wainwright* (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, in violation of *United States v. Tucker* (1972) 404 U.S. 443,[1] and he attacked some other aspects of the sentencing proceedings. Following the procedure adopted in *Lipscomb v. Clark* (5th Cir. 1972) 468 F.2d 1321, the district court rejected the *Tucker* contention, stating that "even if all challenged priors are disregarded the sentence would be the same in this case." (*Farrow v. United States* (S.D.Cal.1974) 373 F.Supp. 113, 117.) The majority opinion holds that the district court correctly followed *Lipscomb,* and that no evidentiary hearing was required either on the petitioner's *Tucker* claims or his other challenges to deficiencies in the sentencing procedures.

---

1. Six prior convictions were listed in the presentence report which the sentencing judge states he had "read and considered" prior to imposing sentence. Of these, four were uncounseled priors. The remaining priors were challenged on other constitutional grounds.

I would not follow *Lipscomb* because it is contrary to the teaching of *Tucker.* Instead, I would adopt a simple, straightforward procedure: Upon the petitioner's showing that prior convictions obtained in violation of *Gideon* were brought to the sentencing judge's attention and that the sentence imposed was more than the statutory minimum, the original sentence would be deemed defective, requiring vacation of the original sentence and resentencing of the petitioner after the invalid prior convictions were stricken.

Because I would vacate and remand for resentencing, it is unnecessary to reach the other issues. On resentencing, the petitioner can correct the claimed deficiencies in the sentencing process.

Other circuits, as well as our own, have had difficulty in creating satisfactory procedures to be followed by the district courts in deciding whether a *Tucker* error occurred, and, if it has occurred, the appropriate remedy for violation. Three elements are required to support a claim of *Tucker* error: (1) Prior convictions obtained in violation of *Gideon,* (2) were brought to the sentencing court's attention, (3) that created a " 'reasonable probability' " that the invalid priors enhanced the sentence imposed. (*United States v. Tucker, supra,* 404 U.S. at 445, 92 S.Ct. 589.)

I

*Lipscomb* tells the district court first to assume that the challenged prior convictions are invalid and, on that assumption, to "review the records involved in this conviction" to decide whether the sentence given "would still be the appropriate sentence." (468 F.2d at 1323.) If the district court decided that the sentence it earlier gave was appropriate, *Tucker* relief is denied. Only if it decides that the sentence would be inappropriate does the court then hold an evidentiary hearing to decide whether the prior convictions were unconstitutional, and, if they were, the district court then vacates the sentence and resentences.

The *Lipscomb* procedure complies neither with Section 2255 nor with *Tucker.* The question is not whether the sentence would have been "appropriate," even if the sentencing judge had not known about the invalidity of the prior convictions. The question is whether, at the time of the sentencing, the judge would have given the same sentence if he had known that the prior convictions were invalid and that he could not consider them. The Supreme Court in *Tucker* specifically rejected the Government's argument that resentencing should not be required because "it is highly unlikely that a different sentence would have been imposed even if the judge had known that two of the respondent's previous convictions were constitutionally invalid . . . [and] to now remand this case for resentencing would impose an 'artificial' and 'unrealistic' burden upon the District Court." (404 U.S. at 446, 92 S.Ct. at 591.) If a *Tucker* error could be cured simply by the district judge's reviewing the initial sentencing record, deleting the invalid priors, and deciding whether the sentence was still "appropriate," the Supreme Court's rejection of the Government's argument would be incomprehensible. The Supreme Court, in fact, refused to permit the harmless error doctrine (disguised under the "appropriateness" rubric) to be applied to avoid resentencing.

In the *Tucker* case, prior convictions had been brought to the sentencing court's attention which were constitutionally invalid under *Gideon.* The invalidity of the challenged prior convictions appeared upon the face of the record in support of Tucker's Section 2255 petition. The district court disclaimed its reliance on the invalid prior convictions, concluded that error in admitting the priors was harmless beyond a reasonable doubt, and, upon reconsidering the sentence, denied relief. On appeal, this court agreed that the introduction of the prior convictions for impeachment was harmless error, but we concluded from the fact that the district court imposed the maximum penalty that there was a "reason-

able probability that the defective prior convictions may have led the trial court to impose a heavier prison sentence than it otherwise would have imposed." (431 F.2d 1292, 1294.) We remanded the case for resentencing, and the Supreme Court affirmed.

Stripped of its unnecessary trappings, the *Lipscomb* procedure directs the sentencing judge to strike the invalid prior convictions from his mind, and without any resentencing, to decide whether he would now give the same sentence to the petitioner. That is the procedure that the Government recommended to the Supreme Court in *Tucker* and that both we and the Supreme Court rejected in that case.

The *Lipscomb* formulation is also defective because it requires an assumption of invalidity of the prior convictions before reconsideration of the sentence. In my view, this approach is backwards. Unless the petitioner establishes that the convictions he challenges were invalid under *Gideon,* the sentencing judge has no occasion to reconsider the sentence. An evidentiary hearing challenging the validity of prior convictions on *Gideon* grounds will rarely be necessary. Ordinarily, the face of the record of the prior conviction will reveal either the presence or the absence of counsel. If the record clearly shows that counsel was present, an evidentiary hearing will not be required unless the petitioner claims that the record does not truly reflect the proceedings. If the record is silent concerning the presence of counsel, or if the record is equivocal, the absence of counsel is presumed. (*Burgett v. Texas* (1967) 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319.) In absence of proof from the record that the petitioner knowingly and intelligently waived his right to counsel, the prior conviction is constitutionally infirm. Waiver of counsel cannot be presumed from a silent record. (*Carnley v. Cochran* (1962) 369 U.S. 505, 82 S.Ct. 884, 8 L.Ed.2d 70; *Burgett v. Texas, supra.* Cf. *Boykin v. Alabama* (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274; *Halliday v. United States* (1969) 394 U.S. 831, 89 S.Ct. 1498, 23

L.Ed.2d 16.) The Government bears the burden of proving that the petitioner knowingly and intelligently waived his right to counsel where the record is either silent or equivocal. If the Government makes a showing that petitioner knowingly and intelligently waived counsel, the petitioner must then come forward with evidence to rebut the Government's proof. In almost all cases, the *Gideon* issue will be resolved by the combination of the record of the prior proceedings together with the allocations of the respective burdens of proof. Because the burdens are very difficult to overcome, there will be few occasions in which any kind of evidentiary hearing will be necessary.

The convoluted procedure of *Lipscomb* and such cases as *Brown v. United States* (4th Cir. 1973) 483 F.2d 116, is based upon an unarticulated premise that evidentiary hearings may be required to resolve potential disputes concerning the validity of the prior convictions or the state of the judge's mind at the time of the initial sentencing, or both. The courts have understandably sought to avoid a factual inquiry into the sentencing judge's state of mind when he first sentenced the petitioner. Not only does that inquiry involve the familiar difficulties of reconstructing the mental processes of a person, but also the unhappy prospect that the person whose state of mind is to be reconstructed is that of the sentencing judge. The only person who can testify about the judge's state of mind is the judge himself. If the sentencing judge's testimony is needed to decide the enhancement issue, the hearing must be conducted by a different judge because the judge presiding at the trial cannot testify in that trial as a witness. (Fed.R.Evid. 605.) The sentencing judge's informal disclaimer of reliance, of course, is not testimony, and it cannot be used to support factual findings that Section 2255 mandates.

The purpose of *Tucker* is to prevent the use for any purpose of a conviction obtained in violation of *Gideon.* That purpose is fully achieved by imposing the burden on the petitioner to establish a *prima facie* case

*Tucker* violation by showing that: (1) from the records of the challenged prior convictions, the petitioner neither had counsel nor was there a valid waiver of counsel on the record, (2) the constitutionally invalid prior convictions were called to the attention of the sentencing judge, (3) the sentencing judge did not place on the record at the time of the initial sentencing a denial of reliance on the unconstitutional prior convictions, and (4) the challenged sentence exceeded the minimum sentence that the court could have imposed for the offense or offenses of which the petitioner was convicted. When that showing is made, the sentencing judge should vacate the sentence and resentence the petitioner. That approach follows both the letter and the spirit of *Tucker.*

No reason appears for requiring evidentiary hearings the only purpose of which is to decide whether the sentence should be vacated and the petitioner resentenced. It does not make sense to devote more judicial time in deciding whether to decide than to decide. The simple and straightforward approach is to treat the initial sentencing as defective when the petitioner has made the *prima facie* showing and to follow the procedure which we routinely use for other kinds of defects in sentencing, namely, to vacate and to resentence. (*E. g., United States v. Read* (9th Cir. 1976) 534 F.2d 858; *United States v. Weston* (9th Cir. 1971) 448 F.2d 626.) This is the procedure which we used, not only in *Tucker* itself, but also in *Leano v. United States* (9th Cir. 1974) 494 F.2d 361.

Accordingly, following both *Tucker* and *Leano,* I would overrule contrary authority in the circuit following *Lipscomb,* and I would vacate the sentence and remand the petitioner for resentencing to the district court.